UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DOYLE MIMS,

               Plaintiff,

v.

ERICA HUSS et al.,

               Defendants.
_____/

Case No. 2:19-cv-106

Honorable Gordon J. Quist

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendants Huss, Cody, and Thorrington, as well as Plaintiff's Eighth and Fourteenth Amendment claims against the remaining Defendants, for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues Warden Erica Huss, Counselor Unknown Johnson, Chaplain Tom Prisk, Classification Director Luke Cody, Prison Counselor J. Thorrington, and Corrections Officer Unknown Haralson.

In Plaintiff's amended complaint and memorandum in support (ECF No. 6), he alleges that on March 17, 2019, Defendant Prisk passed out signup sheets for Ramadan meals. Plaintiff filled out the signup sheet and turned it in on the same day. The deadline to sign up was April 5, 2019. On March 20, 2019, Plaintiff received a memo from Defendant Prisk stating that his request to participate in Ramadan was being denied because he was not listed as "Muslim" on the "OMNI" religious section, but was listed as "unknown." Plaintiff asserts that prior to this, he had engaged in arguments with Defendant Prisk regarding disrespect toward Muslims. Thereafter, Plaintiff filed kites directed at Defendant Cody, who was in charge of "OMNI," seeking to clarify his religious preference. Plaintiff did not receive a reply.

Plaintiff filed a grievance on March 27, 2019, but did not receive a response. On April 3, 2019, Plaintiff was transferred to the Ionia Correctional Facility on a temporary basis. Plaintiff was transferred back to MBP on April 18, 2019. On April 23, 2019, Plaintiff spoke to Defendant Thorrington about his desire to be placed on the Ramadan meal list and the issue of his religious preference on OMNI. Defendant Thorrington had Plaintiff sign a declaration of religious faith and sent an email to Defendant Prisk about Plaintiff's situation.

On April 29, 2019, Plaintiff sent a kite to Defendant Prisk regarding his continued desire to participate in Ramadan. On May 3, 2019, Plaintiff received a response stating that Plaintiff had missed the deadline for requesting Ramadan meals, which was April 5, 2019. On May 5, 2019, the first day of Ramadan, Plaintiff did not receive a Ramadan bag. However, Corrections Officer O'Neal said that he remembered Plaintiff participating in Ramadan the

2

previous year and stated that he would send an email to the chaplain and the kitchen on Plaintiff's behalf. Defendant Haralson told Plaintiff that if he saved his trays in an effort to participate in the Ramadan fast, he would receive a ticket for contraband. Plaintiff wrote a kite to the warden and filed a grievance.

On May 13, 2019, Defendant Johnson reviewed Plaintiff's grievance with him. Plaintiff told Defendant Johnson that he had been listed on the OMNI system as Muslim for the past four years, and had been Muslim since he was fourteen years old. Plaintiff stated that he suspected that his religious preference had been changed on OMNI because of his past disagreement with Defendant Prisk. Later that day, Defendant Johnson returned and told Plaintiff that he thought he was correct, and that something seemed "fishy." Plaintiff showed Defendant Johnson the memorandum showing that Plaintiff had signed up for Ramadan in a timely manner, as well as the letter from Defendant Prisk stating that Plaintiff had missed the deadline. Defendant Johnson told Plaintiff that Defendant Prisk was denying him Ramadan meals in order to be malicious and assured Plaintiff that he would begin receiving Ramadan bags that evening. When Defendant Johnson asked if Plaintiff wanted to sign off on the grievance, he said "no" because it was an ongoing issue and he had already missed the first day of the Ramadan fast. Defendant Johnson again assured Plaintiff that he would begin receiving Ramadan bags that evening and left the unit. However, Plaintiff did not receive a Ramadan meal bag that night.

On May 13, 2019, Defendant Haralson told Plaintiff that he was a fake Muslim. Defendant Haralson said that he had written a threatening behavior misconduct on Plaintiff's neighbor, Inmate Green #754619, for helping Plaintiff with legal work. Defendant Haralson stated that Inmate Green deserved it because he was a fake Buddhist and that if Plaintiff kept complaining, he would also write a misconduct on Plaintiff.

3

On May 14, 2019, Plaintiff asked Defendant Johnson why he had not gotten his Ramadan meal bag. Defendant Johnson told Plaintiff that he did not like Muslims and that Plaintiff was a pest. Defendant Johnson also stated that the corrections officers believed that Plaintiff was a fake Muslim. Plaintiff continued to write letters to each Defendant regarding the denial of Ramadan meals, but Plaintiff never received any replies.

On May 15, 2019, Defendant Johnson told Plaintiff that he was correct, but Defendant Johnson was unable to admit it in writing. Defendant Johnson asked for documents proving that Plaintiff was listed as a Muslim in OMNI, despite the fact that Plaintiff had already shown them to him. Plaintiff asked Defendant Johnson if he would tell the truth about the documents if they were confiscated or lost, and Defendant Johnson said "no." Therefore, Plaintiff refused to let Defendant Johnson take the documents. Defendant Johnson told Plaintiff that he had to do what was best for his boss, Defendant Huss, so he was not going to be able to help Plaintiff resolve the issue.

Plaintiff continued to be denied Ramadan meals. In addition, Defendant Haralson and other corrections officials told Plaintiff that he had "better sign off" on the grievance or he would lose his shower privileges. Plaintiff claims that Defendants' conduct violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. Defendants Huss and Cody

Initially, the Court notes that Plaintiff fails to make specific factual allegations against Defendants Huss and Cody, other than his claim that they failed to respond to his

5

grievances and kites. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Huss and Cody engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Defendants Johnson, Prisk, Thorrington, and Haralson

As noted above, Plaintiff claims that Defendants Johnson, Prisk, Thorrington, and Haralson were all involved in preventing him from participating in the Ramadan fast by lying about his status as a Muslim or by failing to intervene on Plaintiff's behalf.

#### 1. Eighth Amendment

Plaintiff claims that Defendants' conduct violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-

46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). In this case, Plaintiff claims that he was deprived of his right to participate in the Ramadan fast, but was given his regular meal trays. These allegations do not implicate the Eighth Amendment. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

2. First Amendment Free Exercise

Plaintiff also claims that Defendants violated his First Amendment right to free exercise of his religious beliefs. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348

7

(1987) (citations omitted). To demonstrate that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is

satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

In this case, Plaintiff alleges facts which, if true, support a finding that Defendants Prisk, Johnson, and Haralson were aware of the fact that Plaintiff was a Muslim and that they knowingly prevented him from participating in the Ramadan fast without any justification. Therefore, Plaintiff's free exercise claims against Defendants Prisk, Johnson, and Haralson are not clearly frivolous and may not be dismissed on initial review.

However, Plaintiff's only allegations against Defendant Thorrington are that he had Plaintiff sign a declaration of religious preference and emailed Defendant Prisk on Plaintiff's behalf. Plaintiff's allegations regarding Defendant Thorrington do not show that he engaged in any improper conduct toward Plaintiff. Therefore, Defendant Thorrington is properly dismissed from this action.

3. Retaliation

Plaintiff claims that Defendant Prisk denied Plaintiff the ability to participate in Ramadan in retaliation for a past disagreement between Plaintiff and Defendant Prisk regarding the way that Muslims were treated in the prison. Plaintiff also claims that Defendant Haralson retaliated against him when he told Plaintiff that if Plaintiff kept complaining about his inability

9

to participate in Ramadan, he would write a threatening behavior misconduct on Plaintiff. Defendant Haralson also told Plaintiff that he had "better sign off" on his grievance or he would lose his shower privileges.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471

F.3d at 741). The Court concludes that Plaintiff's retaliation claims against Defendants Prisk and Haralson are not clearly frivolous and may not be dismissed on initial review.

4. Fourteenth Amendment

Plaintiff makes a conclusory assertion that Defendants violated his due process rights. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Plaintiff does not allege facts which implicate his procedural due process rights.

To the extent that Plaintiff is asserting a violation of his substantive due process rights, this claim also lacks merit. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there is a specific constitutional amendment that applies to Plaintiff's claims. As previously discussed, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's free exercise and retaliation claims. Thus, the standard

applicable to that source, the First Amendment right to be free from retaliation and to exercise one's religious beliefs, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Consequently, Plaintiff's substantive due process claims will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Huss, Cody, and Thorrington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's Eighth and Fourteenth Amendment claims. Plaintiff's free exercise claims against Defendants Johnson, Prisk, and Haralson, and his retaliation claims against Defendants Prisk and Haralson remain in the case.

An order consistent with this opinion will be entered.

Dated: October 24, 2019                                /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                          UNITED STATES DISTRICT JUDGE